

**SO ORDERED.**

**SIGNED this 19 day of May, 2011.**

*Stephani W. Humrickhouse*

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## FAYETTEVILLE DIVISION

IN RE:

CASE NO.

**CRAIG GIPSON HOLLAND**
**CAREN CAMERON HOLLAND**

**10-05404-8-SWH**

DEBTORS

### ORDER DENYING OBJECTION TO CLAIM

A hearing took place on March 17, 2011, on the debtor's objection to the proof of claim filed by Sharonview Credit Union. Based on the following, the debtors' objection is denied. As a result, Sharonview Credit Union will have a secured claim in the amount of $24,248.00, secured by the debtor's 2002 Pontiac Grand Prix, 2001 Ford Supercrew Truck, and 1997 Skyline Mobile Home, and an unsecured claim in the amount of $28,620.76.

### BACKGROUND

Craig Gipson Holland and wife, Caren Cameron Holland, the debtors, filed a petition for relief under chapter 13 of the Bankruptcy Code on July 7, 2010. On August 2, 2010, Sharonview filed a proof of claim in the amount of $52,868.76. The proof of claim asserted that Sharonview has a claim in the amount of $52,868.76 that is secured by collateral with a total value of $24,248.00.

The debtors represented through their objection to the proof of claim that on February 7, 2005, the male debtor, Craig Holland, executed an Open-end Credit Plan, Disclosures, Credit

Agreement and Security Agreement (the "Open-end Credit Plan") with Sharonview in order to purchase a 1997 Skyline mobile home, which serves as the debtors' principal residence. This credit agreement provided for subsequent loans and secured advances of money from time to time subject to approval of the credit union.[1] The purpose of the Open-end Credit Plan is to create a convenient way for the borrower to obtain a loan from which it can borrow future advances under "subaccounts" which refer to the several types of credit available under the Plan. Contained within the Open-end Credit Plan are clauses regarding cross-collateralization and future advances.

On March 16, 2006, the male debtor borrowed $8,800.00 pursuant to the terms of the Open-end Credit Plan through a related Open End Credit Plan Advance Receipt in order to purchase a 2002 Pontiac Grand Prix. Sharonview was granted a senior security interest in the Pontiac which Sharonview duly perfected. Subsequently, on September 18, 2006, the male debtor borrowed $18,725.00 pursuant to the terms of the Open-end Credit Plan through a related Open-end Credit Plan Advance Receipt in order to purchase a 2001 Ford Supercrew truck. Sharonview was granted a senior security interest in the Ford which Sharonview duly perfected. At some point during the debtor's course of business with Sharonview it opened a line of credit and a credit card account pursuant to the terms of the Open-end Credit Plan.

In January 2009, the male debtor notified Sharonview of his difficulty in making four separate payments each month and requested that the loans be consolidated into a single loan with a single monthly payment. On January 15, 2009, the male debtor borrowed the sum of $55,186.13 pursuant to the terms of the Open-end Credit Plan through a related Open-end Credit Plan Advance

---

[1] "This Open-end Credit Plan is a quick and convenient way for you to obtain a loan when you need it. This is an Open-end, multi-featured credit plan. We anticipate that you will borrow money (called "advances") from time to time under the Plan." Open-end Credit Plan p. 1.

Receipt in order to refinance and consolidate the loans on the mobile home, car, truck, personal line of credit, and credit card account into a single loan.  This loan was referred to in the Open-end Credit Plan Advance Receipt as a "subaccount" under the Open-end Credit Plan.  The Advance Receipt states that "[t]he advance is secured by your shares, all property securing other plan advances and loans received in the past or in the future, and the following:" and then identifies the 1997 Skyline mobile home as a motor vehicle securing this advance.  Adv. Receipt dated Jan. 15, 2009.

At issue in the objection to the proof of claim are the cross-collateralization and future advance clauses contained in the Open-end Credit Plan.  The cross-collateralization provision states:

> [p]roperty given as security under this Plan or for any other loan I have with the credit union will secure all amounts I owe the credit union now and in the future. However, property securing another debt will not secure advances under the Plan if such property is my principal residence (unless the proper rescission notices are given and any other legal requirements are satisfied), or are non-purchase money household goods.  Obligations secured by my primary residence, household goods and any funds in an IRA or Keogh account are not included in your lien or this security interest, unless subject to specific pledge or security agreement.

Open-end Credit Plan p. 4.  All of the Advance Receipts requested by the debtor provide that

> Borrower agrees to abide by the terms of the Credit Agreement and GRANTS TO THE CREDIT UNION A SECURITY INTEREST IN THE PROPERTY DESCRIBED ABOVE.  This pledge of security is governed by the Security Agreement that Borrower entered into when the Open-end Plan was opened. Property given as security for this loan or for any other loan will secure all amounts I owe the credit union now and in the future.

Open-end Credit Plan Advance Receipts.

The debtors contend that Sharonview violated provisions of the Federal Truth in Lending Act and its own cross-collateralization clause by failing to provide the proper rescission notices when consolidating the male debtor's loans, and, as a result, Sharonview is an unsecured creditor.

Specifically, the debtors contend that because the mobile home serves as their principal residence and because the January 15, 2009 transaction was a new loan secured by that principal residence, the bank was required to comply with the right of rescission notice requirements of the Federal Truth in Lending Act.  No such notices were provided; as such, the debtors assert that Sharonview does not have a security interest in the mobile home.  Further, the debtors quote the cross-collateralization language of the Open-end Credit Plan in support of their position, asserting that this clause also required Sharonview to provide rescission notices because the property securing the consolidation loan is the debtors' residence.  In the alternative, the debtors argue that even if Sharonview has a security interest, it did not comply with the cross-collateralization clause, and therefore is not secured to the extent of the value of all three pieces of collateral, but rather is secured only to the extent of the value of *either* the mobile home *or* the combined value of the car and the truck.

Sharonview argues, under the same cross-collateralization provisions cited by the debtors, that it was not necessary to obtain re-pledges as to the Pontiac and the Ford because those vehicles served as collateral for all amounts owed to the credit union at the time initially pledged and in the future.  As to the mobile home, it is Sharonview's position that rescission notices were not required by law or contract, but the contract did provide that each obligation secured by a principal residence must have a specific pledge of security.  According to Sharonview, this pledge requirement was satisfied when it had the male debtor re-pledge the mobile home, his principal residence, under the Open-end Credit Plan Advance Receipt dated January 15, 2009 (the consolidation loan).  Thus, Sharonview asserts that its interest in all three pieces of collateral was at all times perfected as required by law.

4

The key issues to be resolved are (1) whether the cross-collateralization provision applies to the loan consolidation, and (2) whether Sharonview was obligated by law to provide the debtor with a notice of rescission in connection with the loan consolidation because the debtor's primary residence served as collateral under the consolidation loan.

## DISCUSSION

**Plain Language of Contract**

Under the Open-end Credit Plan, there are only two ways in which Sharonview can obtain a security interest in the debtors' mobile home. Sharonview could take a direct security interest in the mobile home or rely upon the cross-collateralization provision. The debtors primarily argue that the mobile home does not secure the debt under the Open-end Credit Plan because Sharonview did not comply with the notice of rescission requirements under the cross-collateralization clause of the agreement. However, Sharonview does not rely on the cross-collateralization language for its security interest and, even if it did, the restrictive language of the cross-collateralization provision does not apply. Specifically, the first part of the cross-collateralization clause reads, "property securing *another debt* will not secure advances under the Plan if such property is my principal residence (unless proper rescission notices are given[)]." Open-end Credit Plan p. 4. (Emphasis added.) Under the present facts, the mobile home is the "property," but it does not secure "another debt;" rather, the mobile home secures *this* debt because it is actually recited as security in the Advance Receipt under which the debt was consolidated. <u>See</u> Adv. Receipt dated Jan. 15, 2009. Sharonview relies upon the <u>direct</u> <u>pledge</u> of the mobile home for this transaction. The Advance Receipt falls under the umbrella of the master agreement, the Open-end Credit Plan, which provides, both on the first page and in the second half of the cross-collateralization clause, that "[o]bligations

5

secured by my primary residence . . . are not included in your lien or this security interest, unless subject to specific pledge or security agreement." Open-end Credit Plan p. 4. Because the mobile home was specifically re-pledged as security for the debt in question, unless there is a separate right of rescission in the instance of this direct pledge, Sharonview has an enforceable security interest in the mobile home.

**Open-end Credit Plans and Rights of Rescission**

The debtors further contend that Sharonview lacks security in the mobile home based upon its failure to comply with the right of rescission notice requirements of the Federal Truth in Lending Act. An Open-end Credit Plan is defined by Regulation Z of the Federal Truth in Lending Act (the "Act") as consumer credit extended by a creditor under a plan in which: (i) The creditor reasonably contemplates repeated transactions; (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid. 12 C.F.R. § 226.2(a)(20) (1994) (Regulation Z); 15 U.S.C. § 1602(i). The Act requires, for Open-end credit plans where the credit advances are secured by property, that the creditor provide the debtor with "a statement that a security interest has or will be taken in . . . the [property purchased] as part of the credit transactions," such as the pledges as to the vehicles and the mobile home that accompanied the correlating advances under the debtors' Open-end Credit Plan. 15 U.S.C. § 1637(a)(6); 12 C.F.R. § 226.6(c).

The general rule governing a borrower's right to rescind requires that a lender notify the borrower of its right to rescind a consumer credit transaction in which a security interest is or will

6

be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended.  15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(1).  However, both the Act and Regulation Z list transactions which are exempt from the general rule.  A refinance credit transaction, described as a "refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling," is one of those exceptions.  12 C.F.R. § 226.23(f)(2); see also 15 U.S.C. § 1635(e)(2) ("a transaction which constitutes a refinance or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property" is an exempted transaction under the Act).  This exemption is based on the belief that "although general consumer borrowers need a 'cooling off' period to reconsider encumbering title to their homes, a borrower who refinances has already had the time to rethink with respect to the old money." In re Porter, 961 F.2d 1066, 1074 (3d Cir. 1992).

In the present case, the male debtor entered into an Open-end Credit Plan with Sharonview in order to purchase the mobile home.  Between February 2007 and January 2009, the debtor opened separate subaccounts in order to purchase a Pontiac Grand Prix SE and a Ford F150 SuperCrew truck, as well as to open a line of credit and a credit card account.  Then, in January 2009, the debtor contacted Sharonview in order to consolidate his loans into a single loan, with a set interest rate and a single monthly payment.  Sharonview took all of the debtor's then-existing subaccounts and consolidated them into a single subaccount loan under the original Open-end Credit Plan.  The same borrower, the same creditor, and the same property were all part of the consolidation of the then existing extension of credit.  Therefore, the transaction constitutes a refinance credit transaction as defined by the Act and Regulation Z and is exempt from the rescission notice requirements.  As

such, Sharonview was not required to provide the debtor with notice of a right of rescission. Instead, Sharonview properly complied with its own contract provision requiring the specific pledge of a principal residence if it is to serve as collateral under a loan advance.

**Liens on the Motor Vehicles**

At the hearing, the debtors raised the issue of whether Sharonview had a continuously perfected security interest in the car, truck, and mobile home throughout the duration of the loan consolidation process, because the January 15, 2009 Advance Receipt only indicated a re-pledge of the debtor's mobile home and did not explicitly reference the car or truck. As discussed above, Sharonview contends that the mobile home was re-pledged on the January 15, 2009 Advance Receipt solely because of the requirement provided in its cross-collateralization and future advance provisions.

With regard to the Pontiac and the Ford, Sharonview's initial security interest (obtained through pledges contained within separate Advance Receipts) is unaffected by the consolidation loan. The vehicles did not need to be re-pledged to secure the consolidation loan. Rather, the first sentence of the cross-collateralization clause covers the vehicles: "[p]roperty given as security under this Plan or for any other loan I have with the credit union will secure all amounts I owe the credit union now and in the future." Open-end Credit Plan p. 4. Accordingly, Sharonview also has a lien in the Pontiac and the Ford vehicles.

Under North Carolina law, "a mobile home is a 'motor vehicle' for purposes of the statutes dealing with registration and ownership of motor vehicles." In re Meade, 174 B.R. 49, 51 (Bankr. M.D.N.C. 1994). The filing of a financing statement is not necessary or effective to perfect a security interest in property subject to a certificate of title statute covering motor vehicles. N.C.

8

Gen. Stat. § 25-9-311(a)(2). The perfection of security interests in motor vehicles is governed by Chapter 20 of the North Carolina General Statutes. See N.C. Gen. Stat. § 25-9-311(a)(2), N.C. Comment. Pursuant to Chapter 20, certificates of title on motor vehicles "need not be renewed annually" and "remain valid until canceled by the Division [of Motor Vehicles] for cause or upon a transfer of any interest shown therein." N.C. Gen. Stat. § 20-57(h).

Sharonview acquired a certificate of title on the mobile home on March 2, 2005, a certificate of title on the Pontiac Grand Prix SE on April 13, 2006, and certificate of title on the Ford 150 SuperCrew on October 17, 2006. These certificates were neither cancelled by the Division of Motor Vehicles nor transferred at any time since their issuance. Consequently, Sharonview has had a continuously perfected interest in the Pontiac, the Ford and the Skyline mobile home since the date of its lien as indicated on the respective certificates of title.

## CONCLUSION

Based on the foregoing, the debtors' objection to Sharonview's claim will be denied. The January 15, 2009 "consolidation loan" was effectively a refinancing transaction because it was an advance under an existing credit facility rather than an entirely new loan. Rescission notices therefore were not required by law or by contract. As a result, and because of the re-pledge of the mobile home, Sharonview maintained its security interest in the mobile home, the Ford, and the Pontiac, and its interest remained perfected because the certificates of title were continuously valid.

Accordingly, the debtors' objection to Sharonview's claim is **DENIED.** Sharonview shall have a secured claim in the amount of $24,248.00, secured by the mobile home, the Ford, and the Pontiac, and an unsecured claim for the balance, $28,620.76.

**SO ORDERED**.

**END OF DOCUMENT**

9